UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| THE PROCTER & GAMBLE COMPANY, ) ) Plaintiff, ) ) v. ) ) ) ) GEORGIA-PACIFIC ) CONSUMER PRODUCTS LP, ) ) Defendant. ) ) | CIVIL ACTION NO. 1:09-cv-318 SJD<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFF THE PROCTER & GAMBLE COMPANY'S
COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

## I.     INTRODUCTION

1. This action arises from the marketing, distribution and sale by the defendant, Georgia-Pacific Consumer Products LP ("Georgia-Pacific"), of paper towel products that misappropriate the valuable, unique and distinctive trademark of the plaintiff, The Procter & Gamble Company ("P&G"), in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and state statutory and common law.

2. P&G is the world's largest consumer goods company. P&G is a global leader in the design, development and sale of high quality and highly distinctive consumer products, including numerous products which are famous, household names. These famous products include a line of paper towels marketed by P&G for more than 40 years under the brand name Bounty®.

3. Since its introduction in 1964, Bounty® has become America's most popular paper towel. Bounty® paper towels are renowned for their quality and performance. Bounty® paper towels are known as the "Quicker Picker-Upper" because their thickness and absorbency allow one sheet of Bounty® to absorb more liquid than multiple sheets of competitive brands. Today, Bounty® is the top-selling brand of paper towels in the United States.

4. In or about February 2008, P&G launched Bounty® ExtraSoft, a new premium line of Bounty® paper towels. Bounty® ExtraSoft paper towels combine cloth-like softness with outstanding durability and absorbency. Bounty® ExtraSoft is sold in the vast majority of food and mass retail stores, including, for example, Walmart, Target, Kmart, Kroger and Meijer. Since its introduction, Bounty® ExtraSoft has been extraordinarily successful. In the fourteen months that it has been on the market, retail sales of Bounty® ExtraSoft have exceeded $100 million in the United States.

5. Since its introduction, P&G has marked Bounty® ExtraSoft with P&G's unique, distinctive, and immediately recognizable "BOUNTY EXTRASOFT BOWTIE MARK." The BOUNTY EXTRASOFT BOWTIE MARK is a protectable P&G trademark.

6. As a result of P&G's extensive promotion of Bounty® ExtraSoft and the BOUNTY EXTRASOFT BOWTIE MARK, its continuous and exclusive use of the unique and distinctive BOUNTY EXTRASOFT BOWTIE MARK since at least February 2008, and the success that Bounty® ExtraSoft paper towels have achieved in the marketplace, the BOUNTY EXTRASOFT BOWTIE MARK has become associated with P&G and Bounty® ExtraSoft. The BOUNTY EXTRASOFT BOWTIE MARK has acquired enormous value as an identifier of P&G's high-quality Bounty® ExtraSoft paper towels and has earned substantial customer goodwill since the introduction of Bounty® ExtraSoft to the market in the United States.

- 3 -

7. The unique and distinctive curved, bowtie-like shape of the BOUNTY EXTRASOFT BOWTIE MARK is illustrated below:



**BOUNTY EXTRASOFT BOWTIE MARK**

8. The BOUNTY EXTRASOFT BOWTIE MARK is often repeated on the surface of every sheet of Bounty® ExtraSoft, as depicted below:



- 3 -

- 4 -

9. As shown in the photographic examples below, the BOUNTY EXTRASOFT BOWTIE MARK is prominently featured and emphasized on the product packaging itself and is plainly visible on the surface of the paper towel even when the product is in its clear plastic packaging:

 

10. Until approximately one month ago, P&G's Bounty® ExtraSoft was the only paper towel product on the market to feature the distinctive BOUNTY EXTRASOFT BOWTIE MARK.

11. The defendant, Georgia-Pacific, manufactures and sells the Brawny® brand of paper towels. The defendant's Brawny® brand, which competes directly with P&G's Bounty® products, ranks a distant second behind P&G's Bounty® in the paper towel market.

12. Beginning in 2001 until approximately one month ago, Brawny® paper towels were adorned with the following shapes:



- 4 -

13. Despite the infinite number of shapes from which to choose, and after having sold competing Brawny® paper towels for decades without any shapes resembling P&G's BOUNTY EXTRASOFT BOWTIE MARK, approximately one month ago, Georgia-Pacific unexpectedly introduced into the marketplace "new" Brawny® paper towels.  This "new" product, which Georgia-Pacific touts as the "Best Brawny Ever," claims to be "softer and thicker" and emphasizes a "Great New Look" that uses a shape remarkably similar to P&G's BOUNTY EXTRASOFT BOWTIE MARK.  As depicted below, the defendant achieved this strikingly similar "new look" by directly copying the unique and distinctive BOUNTY EXTRASOFT BOWTIE MARK:



**Georgia-Pacific's "New" Brawny®**  
**Bowtie-like Shape**

**BOUNTY® EXTRASOFT**  
**Bowtie Mark**

14. Apparently threatened by the commercial success of Bounty® ExtraSoft, and fully aware of P&G's rights in – and the broad consumer recognition of – the BOUNTY EXTRASOFT BOWTIE MARK, the defendant's "Great New" Brawny® look is an obvious attempt to trade on the goodwill, reputation and commercial success achieved by P&G's Bounty® ExtraSoft.

15. As a result, P&G seeks injunctive relief and damages to prevent Georgia-Pacific from continuing to deceive and confuse consumers through its marketing and sale of Brawny® products misappropriating the BOUNTY EXTRASOFT BOWTIE MARK, and from destroying the goodwill and reputation for quality developed by P&G in its BOUNTY EXTRASOFT BOWTIE MARK.

- 5 -

**II.     PARTIES**

16.     The plaintiff, P&G, is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 1 Procter & Gamble Plaza, Cincinnati, Ohio.

17.     The defendant, Georgia-Pacific, is a Delaware limited partnership with a principal place of business at 133 Peachtree Street, Atlanta, Georgia.

**III.    JURISDICTION AND VENUE**

18.     This Court has subject matter jurisdiction over P&G's claims because they arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(b) (unfair competition), and 15 U.S.C. § 1121 (Lanham Act).  This Court has supplemental jurisdiction over P&G's state law claims pursuant to 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Georgia-Pacific under Ohio Rev. Code Ann. § 2307.382 because Georgia-Pacific transacts business, contracts to supply, sells and has sold paper towels infringing P&G's intellectual property in the State of Ohio.

20.     Venue is proper pursuant to 28 U.S.C. § 1391.

**IV.    FACTUAL BACKGROUND**

21.     Established in 1837, P&G began as a small, family-operated soap and candle company in Cincinnati.  Since then, P&G has grown into the world's largest consumer goods company that today markets its brands in more than 180 countries.  In the fiscal year ending June 30, 2008, P&G had worldwide sales of more than $83 billion.

22.     P&G is one of the most highly regarded manufacturers and marketers of consumer goods in the United States, with a long history of successfully marketing and selling high quality, immediately recognizable brands.  P&G has been recognized by *Barron's* as one of

"World's Most Innovative Companies," has received top rankings on the Dow Jones Sustainability Index from 2000-2008, and was named the "Advertiser of the Year" at the 2008 Cannes International Advertising Festival.

### B. P&G's Bounty® ExtraSoft and the BOUNTY EXTRASOFT BOWTIE MARK

23. P&G's Bounty®, which is known as the "Quicker Picker-Upper" because of its superior performance attributes, has been America's most popular paper towel for over 30 years.

24. In or about February 2008, P&G launched Bounty® ExtraSoft, a new premium line of Bounty® paper towels. Bounty® ExtraSoft paper towels combine cloth-like softness with outstanding durability and absorbency. Bounty® ExtraSoft is available nationwide, and, to date, it has achieved retail sales of over $100 million in the United States alone.

25. Bounty® ExtraSoft bears the unique, distinctive BOUNTY EXTRASOFT BOWTIE MARK, which consumers immediately recognize and associate with authentic, high quality P&G products, P&G, and Bounty® ExtraSoft.

26. Since its introduction, P&G has invested significant resources promoting Bounty® ExtraSoft with the BOUNTY EXTRASOFT BOWTIE MARK. P&G has spent over $25 million to advertise and promote Bounty® ExtraSoft in a variety of ways, including through national television and print advertisements, in-store displays, direct-to-consumer mailers, coupons, internet advertisements, and co-merchandising events with other Bounty® products. The distinctive BOUNTY EXTRASOFT BOWTIE MARK is consistently and prominently featured in such advertising. Examples of various Bounty® ExtraSoft advertising and promotional materials are attached as **Exhibit 1**.

27. Until approximately one month ago, Bounty® ExtraSoft was the only paper towel on the market to use the BOUNTY EXTRASOFT BOWTIE MARK. Each of the millions of

rolls of Bounty® ExtraSoft sold features the BOUNTY EXTRASOFT BOWTIE MARK, which is itself inherently distinctive.  More particularly, the unique BOUNTY EXTRASOFT BOWTIE MARK serves to automatically identify P&G's Bounty® ExtraSoft paper towels in the minds of consumers, independent of any words accompanying the trademark.  Consumers expect products with the BOUNTY EXTRASOFT BOWTIE MARK to have the same high quality, value and performance as P&G's other Bounty® products.

28. In addition to being inherently distinctive, P&G's extensive promotion of Bounty® ExtraSoft, its continuous and exclusive use of the unique and distinctive BOUNTY EXTRASOFT BOWTIE MARK since at least February 2008, and the tremendous commercial success achieved by Bounty® ExtraSoft in the marketplace, have further strengthened the association of the BOUNTY EXTRASOFT BOWTIE MARK with P&G and Bounty® ExtraSoft in the minds of consumers.

29. The BOUNTY EXTRASOFT BOWTIE MARK has acquired enormous value as an identifier of P&G and Bounty® ExtraSoft, and has earned substantial customer goodwill.  By virtue of the prominent use of the unique and distinctive BOUNTY EXTRASOFT BOWTIE MARK and its prominence in the U.S. market, consumers of paper towels throughout the United States readily recognize, identify and distinguish Bounty® ExtraSoft from paper towels produced by other manufacturers.  P&G's BOUNTY EXTRASOFT BOWTIE MARK is well-known throughout the markets for household products and cleaning supplies.

30. The BOUNTY EXTRASOFT BOWTIE MARK is non-functional because it is not necessary to the use or purpose of the product or its packaging, and does not affect the cost or quality of the product or its packaging.  In addition, there are many other commercially available paper towels that compete with Bounty® ExtraSoft—including paper towels manufactured by

US1DOCS 7158105v3

the defendant—that are marketed and sold without P&G's unique and valuable BOUNTY EXTRASOFT BOWTIE MARK. Photographic depictions of several alternative shapes are shown in **Exhibit 2**.

## V. Georgia-Pacific's Misappropriation and Infringement of P&G's Intellectual Property

31. The defendant, Georgia-Pacific, manufactures and sells the Brawny® brand of paper towels. Brawny® paper towels compete directly with P&G's Bounty® products—and in many stores are displayed side-by-side—although Brawny®'s sales rank a distant second behind that of Bounty®.

32. Since 2001, defendant Georgia-Pacific has marketed its Brawny® paper towels with "scrubbing circles" shapes on each paper towel, as shown below:



33. In February 2008, shortly after P&G launched its new, premium Bounty® ExtraSoft product with the BOUNTY EXTRASOFT BOWTIE MARK, Georgia-Pacific introduced a "new" Brawny® product which they touted as "Softer & Thicker!" As shown below, this "new" product had the same "scrubbing circles" shapes found on Brawny® since 2001:

- 9 -



34.     In April 2009, after Bounty® ExtraSoft achieved more than $100 million in retail sales, while the volume of sales of Brawny® had declined, the defendant launched yet another "new" Brawny® paper towel. This "new" product, which Georgia-Pacific touts as the "Best Brawny Ever," claims to be "softer and thicker" and emphasizes a "Great New Look." Photographs of the defendant's newest Brawny® product are attached as **Exhibit 3**.

35.     Despite the infinite number of available alternative shapes, including Brawny®'s own "scrubbing circles" which it used exclusively for the past eight years, the "Great New Look" of the defendant's newest Brawny® is strikingly similar in appearance to the BOUNTY EXTRASOFT BOWTIE MARK. This is not surprising because the defendant's newest Brawny® misuses and misappropriates P&G's valuable intellectual property. In particular, and as shown below, the defendant's newest Brawny® uses a shape repeated across each paper towel that is virtually identical to the BOUNTY EXTRASOFT BOWTIE MARK, as the below comparison demonstrates:

US1DOCS 7158105v3



| Georgia-Pacific Infringing Element | BOUNTY® EXTRASOFT Bowtie Mark |
| --- | --- |
| Georgia-Pacific Infringing Element | BOUNTY® EXTRASOFT Bowtie Mark |

36. Georgia-Pacific has further misappropriated the BOUNTY EXTRASOFT BOWTIE MARK by prominently displaying the infringing shapes on the product's packaging:



37. Based on Georgia-Pacific's conduct, it is apparent that its misappropriation of P&G's valuable intellectual property was willful and intended to confuse and mislead consumers.

- 11 -

38. As P&G's direct competitor in the paper towel market for many years, and with its Brawny® product sold side-by-side with Bounty® ExtraSoft in many instances, Georgia-Pacific had actual knowledge of the BOUNTY EXTRASOFT BOWTIE MARK.

39. Georgia-Pacific is not licensed, authorized, sponsored, endorsed, or approved by P&G to use the distinctive BOUNTY EXTRASOFT BOWTIE MARK on its products or packaging.

B. **Attempts to Stop Georgia-Pacific's Infringing Conduct**

40. In an attempt to protect its business and reputation associated with its BOUNTY EXTRASOFT BOWTIE MARK, on April 16, 2009, P&G sent a cease and desist letter to Georgia-Pacific informing the defendant that the pattern of shapes featured on its newest Brawny® paper towels violates P&G's valuable intellectual property rights, and requesting that it discontinue the marketing and sale of the infringing Brawny® products. A copy of that letter is attached as **Exhibit 4**.

41. To date, the defendant refuses to stop its unlawful conduct and continues to offer and sell infringing Brawny® products in the United States.

42. Accordingly, P&G seeks injunctive relief and damages to prevent the defendant from continuing to misappropriate P&G's intellectual property, and to prevent consumers of paper towel products from being further confused and deceived by the defendant's infringing conduct.

**FIRST CLAIM FOR RELIEF**
(Federal Unfair Competition: Infringement of the
BOUNTY EXTRASOFT BOWTIE MARK, 15 U.S.C. § 1125(a))

43. P&G incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

- 12 -

44. P&G's BOUNTY EXTRASOFT BOWTIE MARK is inherently distinctive and/or has acquired secondary meaning among the relevant purchasing public.

45. P&G's BOUNTY EXTRASOFT BOWTIE MARK is non-functional.

46. Georgia-Pacific makes, uses, offers for sale, and sells in the United States Brawny® paper towels that copy and misappropriate P&G's unique and distinctive BOUNTY EXTRASOFT BOWTIE MARK.

47. As a result of Georgia-Pacific's conduct, consumers are likely to be confused, mistaken or deceived as to the affiliation, connection and/or association of Georgia-Pacific's Brawny® paper towels with P&G or P&G's Bounty® ExtraSoft, or as to the origin, sponsorship, or approval of Brawny® paper towels, and/or as to the nature, characteristics or qualities of the Brawny® paper towels.

48. Georgia-Pacific's conduct, including as described above, constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49. On information and belief, Georgia-Pacific's unlawful conduct, including as described above, was deliberate, knowing and in willful disregard of P&G's property rights.

50. Because of Georgia-Pacific's conduct, P&G has suffered, and unless Georgia-Pacific's conduct is preliminarily and permanently enjoined, will continue to suffer, actual damages and irreparable harm, as to which it has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**(Violation of Ohio Deceptive Trade Practices Act, Ohio Rev. Stat. § 4165.02(A)(2),(3))**

51. P&G incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

52. P&G's BOUNTY EXTRASOFT BOWTIE MARK is inherently distinctive and/or has acquired secondary meaning among the relevant purchasing public.

53. P&G's BOUNTY EXTRASOFT BOWTIE MARK is non-functional.

54. Georgia-Pacific makes, uses, offers for sale, and sells in the United States Brawny® paper towels that copy and misappropriate P&G's unique and distinctive BOUNTY EXTRASOFT BOWTIE MARK.

55. As a result of Georgia-Pacific's conduct, consumers are likely to be confused, mistaken or deceived as to the affiliation, connection and/or association of Georgia-Pacific's Brawny® paper towels with P&G or P&G's Bounty® ExtraSoft, or as to the origin, sponsorship, or approval of Brawny® paper towels, and/or as to the nature, characteristics or qualities of the Brawny® paper towels.

56. Georgia-Pacific's unfair and unlawful conduct in Ohio, including as described above, constitutes willful and knowing deceptive trade practices in violation of Ohio Rev. Stat. § 4165.02(A)(2),(3).

57. On information and belief, Georgia-Pacific has profited from its infringement of P&G's BOUNTY EXTRASOFT BOWTIE MARK in Ohio, and will continue to profit from it.

58. On information and belief, Georgia-Pacific's unlawful conduct, including as described above, was deliberate, knowing and in willful disregard of P&G's property rights.

59. On information and belief, Georgia-Pacific's has willfully and maliciously engaged in the deceptive trade practices described above, knowing its actions to be deceptive.

60. Because of Georgia-Pacific's conduct, P&G has suffered, and unless Georgia-Pacific's conduct is preliminarily and permanently enjoined, will continue to suffer, actual damages and irreparable harm, as to which it has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### (Common Law Unfair Competition Under Ohio Law)

61.     P&G incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

62.     P&G has invested substantial time and money in the development and promotion of its Bounty® ExtraSoft and the BOUNTY EXTRASOFT BOWTIE MARK.

63.     P&G's BOUNTY EXTRASOFT BOWTIE MARK is valid at common law.

64.     Georgia-Pacific makes, uses, offers for sale, and sells in the United States Brawny® paper towels that copy and misappropriate P&G's unique and distinctive BOUNTY EXTRASOFT BOWTIE MARK in order to exploit and trade off P&G's goodwill and reputation in the market.

65.     As a result of Georgia-Pacific's conduct, consumers are likely to be confused, mistaken or deceived as to the affiliation, connection and/or association of Georgia-Pacific's Brawny® paper towels with P&G or P&G's Bounty® ExtraSoft, or as to the origin, sponsorship, or approval of Brawny® paper towels, and/or as to the nature, characteristics or qualities of the Brawny® paper towels.

66.     Georgia-Pacific's unfair and unlawful conduct, including as described above, constitutes unfair competition in violation of Ohio common law.

67.     On information and belief, Georgia-Pacific's unlawful conduct, including as described above, was deliberate, knowing and in willful disregard of P&G's property rights.

68.     P&G is entitled to recover damages in an amount to be determined at trial, including all profits derived by the defendant as a result of its unfair competition, as well as costs of litigation and attorneys' fees.

US1DOCS 7158105v3

69. Because of Georgia-Pacific's conduct, P&G has suffered, and unless Georgia-Pacific's conduct is preliminarily and permanently enjoined, will continue to suffer, actual damages and irreparable harm, as to which it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, P&G prays that this Court grant the following relief:

1. Enter judgment in favor of P&G on each of its claims;

2. Adjudge that Georgia-Pacific has infringed and continues to infringe P&G's BOUNTY EXTRASOFT BOWTIE MARK;

3. Adjudge that Georgia-Pacific has engaged and continues to engage in unfair competition;

4. Preliminarily and permanently enjoin Georgia-Pacific and its predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliate companies or corporations, and all officers, directors, employees, agents, attorneys, representatives, and those acting in privity or in concert with Georgia-Pacific, or on its behalf, from further infringing P&G's BOUNTY EXTRASOFT BOWTIE MARK or from using any other trademark or trade dress that is a colorable imitation of P&G's BOUNTY EXTRASOFT BOWTIE MARK, or is likely to be confused with the BOUNTY EXTRASOFT BOWTIE MARK, and from engaging in further unfair competition and unfair or deceptive acts or practices;

5. Award P&G damages it has sustained as a result of Georgia-Pacific's infringement of an amount to be determined;

6. Treble the damages assessed in light of Georgia-Pacific's willful infringement;

7. Award P&G its costs and reasonable attorneys' fees;

8. Award P&G interest on any past damages; and

9. Award P&G such other relief as the Court deems just and proper.

**PLAINTIFF CLAIMS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

          Respectfully Submitted,

          THE PROCTER & GAMBLE COMPANY

          By its attorneys,

          s/Patrick D. Lane
          Mark A. VanderLaan (0013297)
          Patrick D. Lane (0012704)
          Dinsmore & Shohl LLP
          255 E. 5th Street
          Suite 1900
          Cincinnati, OH  45202
          Ph. (513) 977-8200
          Fax (513) 977-8141
          Email: mark.vanderlaan@dinslaw.com
                 pat.lane@dinslaw.com

*Of Counsel:*

Mark G. Matuschak
Vinita Ferrera
Christopher R. Noyes
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
Ph. (617) 526-6000
Fax (617) 526-5000
Email: mark.matuschak@wilmerhale.com
       vinita.ferrera@wilmerhale.com
       christopher.noyes@wilmerhale.com

Dated: May 8, 2009